**JACK AMMANN PHOTOGRAMMETRIC ENGINEERS, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 20860.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1965.

Edward B. Benjamin, Jr., Saul Stone, Stone, Pigman & Benjamin, New Orleans, La., for petitioner.

Michael K. Cavanaugh, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, R. P. Hertzog, Acting Chief Counsel, I.R.S., Charles Owen Johnson, Atty., I.R.S., Meyer Rothwacks, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before TUTTLE, Chief Judge, and JONES and ANDERSON,* Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal from the Tax Court's determination of a deficiency against the taxpayer for 1956 income taxes.

Petitioner was incorporated on January 2, 1954, to acquire the business theretofore carried on individually by Jack Ammann. Ammann made an initial contribution of $100,000, in return for which he received 78% of petitioner's stock. The corporation then executed a contract to buy the business, paying $100,000 cash, $90,000 of which was for accounts receivable valued at $90,000, and $10,000 of which was a down payment on the remainder of the purchase price of $817,031.49. This balance of $717,031.49 was to be paid in annual installments of $60,000. No notes were executed but the purchase price was secured by a statutory vendor's lien. Ammann elected to report the sale for tax purposes on the installment basis.

* Of the Second Circuit, sitting by designation.

By July 25, 1956, the installment payments still due amounted to $540,223.40. On this date Ammann transferred this indebtedness to the corporation in return for 120,050 shares of its stock having an equal value. On his income tax return for 1956 Ammann reported the gain of $518,949.64, as a long term capital gain. Later, he filed a claim for refund, alleging that the receipt of petitioner's stock worth $540,223.40 in return for a surrender of the indebtedness of $540,223.40 constituted a transfer of property to a controlled corporation under Section 351, Internal Revenue Code of 1954. This refund claim was allowed and the refund of $121,401.40 was made.

Thereafter, the Commissioner assessed a deficiency of $123,762.65 against the corporation on the theory that petitioner realized income upon the "cancellation of its installment obligation". The contention was that this "cancellation" amounted to a "disposition" of the obligation, which disposition would, under Section 453(d) (1) of the Internal Revenue Code,[1] result in gain in the hands of the taxpayer corporation. Taxpayer contested the assessment in the Tax Court, contending simply that Section 1032 of the Code [2] prevented the single transfer of the corporation debt to it in return for stock from being taxable.

The Tax Court concluded that in the interplay between Section 1032 and Section 453 the transaction must be broken down into two parts—(1) the transfer of "property" in the nature of taxpayer's debt to it for stock, which is non-taxable; (2) the "disposition" by taxpayer of the debt thus transferred to it by either book entry or merger of identity of debtor with creditor which was taxable.[3]

Here, petitioner makes a several-pronged attack on the Tax Court decision. Since these are legal theories that can be fairly disposed of on the record before us, we do not consider that we should refuse to consider them merely because they were not urged in the Tax Court. Chase Manhattan Bank v. Commissioner of Internal Revenue, 5 Cir., 259 F.2d 231.

What is probably the taxpayer's most appealing argument from the standpoint of the economic theories inherent in the taxation of an acknowledged gain as between the two parties to the July 25th contract is the argument that the incidence of the tax should have fallen on Jack Ammann, when, on July 25, 1956, he turned his installment obligation of $540,233.40, representing gain to him in an accounting sense, of $518,949.64, into stock having a value of $540,233.40, thus representing a fully realized economic gain of $518,949.64.

It seems a distortion of the economic facts of life so to apply the taxing statutes as to permit this transaction to be

1. Section 453:
    "(d) Gain or Loss on Disposition of Installment obligation.
    "(1) General Rule. If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—
    "(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or
    "(B) the fair market value of the obligation at the time of * * * disposition, in the case of * * * disposition otherwise than by sale or exchange."
    26 U.S.C.A., 1958 ed., Sec. 453.

2. "Section 1032. Exchange of Stock for Property.
    "(a) Nonrecognition of Gain or Loss. No gain or loss shall be recognized to a corporation on the receipt of money or other property in exchange for stock * * * of such corporation."

3. The Tax Court opinion disposed of the matter thus: "When Petitioner cancelled, either by the physical act of making the appropriate book entries or by merger of the estates of creditor and debtor, its own obligation, held by it as an installment obligation, it 'disposed of' an installment obligation within the meaning of Section 453(d). Cf. Burrell Graves, Inc., 22 T.C. 1134 (1954) and Nebraska Seed Co. v. United States, 116 F.Supp. 740, 127 Ct.Cl. 133 (1953), cert. denied 347 U.S. 1012, 74 S.Ct. 865, 98 L.Ed. 1135."

tax free to the transferor, who got all the economic value from his "disposition" of the debt because of the tax free provisions of Section 351, and then to tax the transferee, the other party to the Section 351 transaction, which got no economic value from the "disposition". We think the petitioner may well ask why the transfer of the debt by Ammann is not a "disposition" of an installment obligation by him, thus giving rise to the gain, but the *receipt* of the debt by the transferee *is* a "disposition" of the obligation, when such disposition has not a cent of economic value to the transferee.

The Commissioner has previously made the same argument as is here maintained by the petitioner in a case less favorable to the taxpayer than the case at bar. In Nebraska Seed Company v. United States, 116 F.Supp. 740, 127 Ct.Cl. 133 (1953) the Commissioner, in his brief, said:

> "When the installment obligations were sold or transmitted by Nebraska to United in the 1947 merger, the deferred payments outstanding [owed by United to Nebraska] at that time became due and payable under the provisions of Code Section 44(d) regardless of whether the merger constituted a taxable reorganization."

In the Nebraska Seed case there was a merger of two other corporations into United Seed Company: Nebraska Seed, which was the creditor of an installment debt, and Yankton, which was the debtor. When there was a merger of the debtor and creditor into a single successor corporation in a corporate reorganization, the Commissioner contended that this amounted to a disposition by Nebraska of its installment contract, giving rise to a gain in its hands. The suit for refund in the Court of Claims was filed by United, the sole remaining corporation and assignee of all assets which had also assumed all liabilities of the debtor corporation, and by Nebraska Seed Company. The court held that the assignment by Nebraska of Yankton's debt to United did not result in gain to Nebraska because of the non-recognition provisions of Section 112(b)(4) of the 1939 Code relating to corporate reorganizations. However, the court held that since United was a party to the litigation, even though United's tax year was not before the court, the suit for refund must be dismissed because if Nebraska was entitled to the refund, United would in turn owe it back to the government.

Both the Tax Court, in this case, and the Commissioner rely heavily on Nebraska Seed as authority for exacting the tax from petitioner here. Apparently the Commissioner acquiesced in the refund to Ammann here because of the Court of Claims decision in Nebraska Seed; he has now changed his position to reflect what he has read into that case.

However, we do not find the Nebraska Seed case a satisfactory basis for achieving what seems clearly to be an irrational result here. It must be remembered that the installment obligation disposed of there was not the obligation of the transferee, but of a third party, which it seems is a significant difference where we are to determine whether the transfer of such installment debt was a "transfer" of "property".[4] Moreover, the Code Sections dealt with in Nebraska Seed were those dealing with corporate reorganizations and corporate liquidations; finally the result in Nebraska Seed would be the same regardless of which corporation, Nebraska Seed or United, was originally liable, because United was the only corporation left and it would be liable as transferee of the assets of Nebraska if Nebraska owed the tax or it would be liable as the taxpayer if the cancellation of the debt amounted to a disposition by it.

Petitioner makes another strong argument that the tax liability should be fixed on Ammann rather than the corporation. It says that the realization by

---

4. Conceptually, the transfer by A to C of a debt owed by B to A is much more easily understood as a transfer of property to C than is the cancellation by A of a debt owed by C to A.

Ammann of the value of the future installments when he received stock of value equal to the future installments brought the transaction within the principles announced by the Supreme Court in Commissioner of Internal Revenue v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743. The Supreme Court, in Lake, held that if an otherwise non-recognition exchange under Section 112 (b) (1) of the 1939 Code also amounts to the "anticipatory assignment of income", such income is taxable notwithstanding it arises from a non-recognition type of transfer. The government seems to come just up to the point of conceding this contention. In his brief the Commissioner says: "While the rationale of the judicially-formed assignment of income principles [5] would, concededly, seem broad enough to generally encompass a non-recognition type of transfer, [here the brief contains a footnote reference as follows: 'Compare Commissioner [of Internal Revenue] v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958), *where assignment of income principles were used to deny qualification under Section 1031 of the 1954 Code, a non recognition section.*'] the transfer, pursuant to Section 351, of installment obligations with the inherent deferred gain has *probably* become so ingrained in the law as to be subject to change only by Congress. (emphasis added)".[6]

This seems to downgrade rather severely the conceded effect of a Supreme Court decision because of assertedly contrary decisions by inferior courts and a rather vague legislative history to the contrary.

Thus, as we have said, a persuasive case has been made out for the petitioner's contention that the transfer of petitioner's installment obligation to it in return for stock gave rise to a taxable gain to Ammann under Section 453(d) (1). However, Ammann's tax is not before us for decision. It is not necessary to resolve this question in order to determine the tax liability of petitioner.

■■ We prefer to decide this case on an interpretation of the statute as it relates directly to petitioner. We recognize the evil Congress sought to remedy when it enacted the predecessor sections to 453. The owner of an installment debt could previously transfer it for full value and avoid reporting the profit at that time. The report of the Ways and Means Committee on Section 44(d) stated:

"To prevent the evasion the subsection terminates the privilege of longer deferring the profit if the seller at any time transmits, distributes or disposes of the installment obligation and compels the seller at that time to report the deferred profits." H.R.Rep. No. 2, 70th Cong. 1st Sess. 16 (1928).

This language is very apt and effective when considered as dealing with a disposition *by the seller* of property giving rise to an installment obligation. It is not apt at all when considered as dealing with a cancellation of the obligation by the *buyer* of the property. The words "distributed, transmitted, sold, or otherwise disposed of" must be considered in *pari materia*. They have the connotation of the transfer of property that has a continuing existence; here there is no transfer by taxpayer of anything. Its receipt of Ammann's claim against it in return for stock resulted in its becoming both creditor and debtor, which in law worked a merger or cancellation of the debt, Martin v. Chambers, 5th Cir., 214 F. 769. We find no authority in any of the cited cases for the proposition that this amounted to a "transfer" by taxpayer of the installment obligation. A different case would be present if Ammann transferred to taxpayer an installment contract owed by a third party to him and if taxpayer disposed of such a chose in

---

5. By this we assume the Commissioner means the terms of the statute as construed by the Supreme Court, which is about as authoritative a "principle" as can be suggested to an inferior court.

6. See Treas.Reg. Sec. 1.453–9(c) (2).

action by further transfer. Cf. Nebraska Seed Co. v. United States, supra, where the obligation held there to have been "disposed of" was not an obligation of the taxpayer but of a third party. See also Miller v. Usry, 160 F.Supp. 368 (W.D.La.1955); Advance Aluminum Castings Corp. v. Harrison, 7 Cir., 158 F.2d 922.

Thus, whether or not Ammann's transfer of the debt to the debtor corporation was such "disposition" of the installment contract as to give rise to the gain in his hands, it did not give rise to any gain to the taxpayer here.

The decision of the Tax Court must be reversed and the case remanded for further proceedings not inconsistent with this opinion.