WALTER A. UTLEY AND VERMELLE S. UTLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Utley v. Commissioner
Docket No. 36975-86.
United States Tax Court
T.C. Memo 1988-575; 1988 Tax Ct. Memo LEXIS 599; 56 T.C.M. (CCH) 885; T.C.M. (RIA) 88575; December 19, 1988. Arlie C. Hooper, Patti C. Bowlan, and William H. Lawson, Jr., for the petitioners. Steven R. Winningham, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to the Tax
Year
Deficiency
§ 6653(a) [1]
§ 6653(a)(1)
§ 6653(a)(2)
1979
$ 22,881.46
$ 1,144.07
--   --           1980
2,088.00
None  --   --           1981
3,921.78
--   None  None          1982
25,485.20
--   $ 1,274.26
50% of interest   due on $ 22,960.20
After the trial the Court permitted respondent to amend his pleadings to conform *602 with the proof. In his amendment to answer filed April 4, 1988, respondent increased the deficiency for 1979 by $ 27,956.24 and decreased the deficiency for 1982 by $ 22,517.20 as an alternative to the deficiencies as originally determined. In conjunction with his alternative argument, respondent increased the section 6653(a) addition to tax to $ 2,088 for 1979 and decreased the section 6653(a)(1) addition to tax for 1982 to $ 148.40. Also, the alternative argument eliminated the section 6653(a)(2) addition to tax for 1982. After concessions by the parties, the issues remaining are: (1) whether petitioners recognized gains on the transfer of property to their wholly owned corporation, (2) whether petitioners recognized gain in a transaction with their wholly owned corporation in which petitioners cancelled the corporation's installment obligation to them, (3) whether petitioners are entitled to deductions for offices in their homes, (4) whether petitioners may deduct unsubstantiated business expenses, and (5) whether petitioners are liable for an addition to tax for negligence for 1979 and 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Walter *603 A. Utley (hereinafter "Utley") and Vermelle S. Utley, petitioners, were husband and wife residing at Holly Springs, Mississippi, at the time they filed their petition in this case. Petitioners timely filed Federal income tax returns for the taxable years 1979, 1980, 1981, and 1982. In 1958 petitioners purchased a home in Holly Springs, Mississippi which was their residence during all of the years at issue. In the middle 1960's petitioners added an office complex to the rear of their Holly Springs home, improved warehouse facilities there, and built a commercial parking lot. The office complex included a conference room, an office, a secretary's office, a file room, two bedrooms with baths, a rest room and a sauna. The bedrooms were built for Utley's business partners and were furnished with motel furniture. The office had two entrances: one from the house and one from the commercial parking lot. Petitioners had both a business and a private telephone line in the office. In 1979, Utley owned 100 percent of International Land Corporation ("ILC"). ILC owned stock in First Advertising, Inc., Val-U-King Homes, Inc., and Arkansas Communities, Inc. Utley was president of ILC *604 and Arkansas Communities. Petitioners each owned 50 percent of Shamrock GMS Corporation ("Shamrock") in 1979. Shamrock had a farming division, a general real estate brokerage division, and a shopping center division. Utley was a real estate consultant during the years at issue and an employee of ILC and Shamrock. He conducted business for ILC and Shamrock, overseeing a shopping center, real estate sales and development, advertising, and farming. Petitioners deducted the following amounts for the Holly Springs home office: 1979
1980
1981
1982
Depreciation
$ 3,647.00
$ 3,647.00
$ 3,647.00
$ 3,647.00
Utilities
1,418.95
1,705.16
1,858.75
1,974.24
Insurance
530.00
503.50
--    503.50
The office was not rented to Utley's employer, Shamrock. Utley's corporations, ILC and Shamrock, also had a business address at 105 Van Dorn Avenue in Holly Springs, Mississippi during the years at issue and listed the Van Dorn address as the corporations' address on their corporate income tax returns for all of the years in issue. Petitioners leased the Van Dorn office building to a pharmacist until the beginning of 1979. During 1979, petitioners *605 moved part of their general real estate business to the Van Dorn office to obtain more visibility. The bookkeeper for ILC, Shamrock and petitioners worked both at the home office and at the office on Van Dorn Avenue. Petitioners also deducted as expenses for an office in their home in Hot Springs, Arkansas, $ 2,805.55 per year for 1981 and 1982. Petitioners owned the home in the middle of the subdivision that Arkansas Communities was developing during the relevant tax years. ILC, Arkansas Communities and Val-U-King Homes used the home for offices. ILC transferred properties to petitioners in 1979 because it was having financial difficulties. Petitioners transferred the properties to Shamrock in an attempt to avoid creditors. ILC filed for bankruptcy in 1980. On February 20, 1979, ILC transferred land and buildings on property known as Bar U Ranch to Utley. Petitioners borrowed $ 250,000 from the Federal Land Bank Association, also on February 20, 1979, secured by Bar U Ranch. Petitioners used $ 12,500 of the loan proceeds to buy stock in the Federal Land Bank (a requirement of the loan) and $ 1,000 to pay loan fees. The remaining funds were disbursed as follows: $ 3,535.74 *606 to "Walter A. Utley, Vermelle S. Utley and North Miss. Savings and Loan"; and $ 232,964.26 to "Walter A. Utley, Vermelle S. Utley and International Land Corporation." On March 16, 1979, ILC transferred a house and lot on Bar U Ranch to Utley for a price of $ 6,000. On October 29, 1979, ILC transferred the Liberty Shopping Center ("Shopping Center") to Mrs. Utley. At the time of transfer of the Shopping Center, the outstanding balance on the loan from the Union Planters Bank secured by the Shopping Center was $ 265,829.81. Mrs. Utley assumed this debt. On December 4, 1979, Utley transferred the house, lot, land and buildings on Bar U Ranch to Shamrock. Shamrock assumed the debt on the Bar U Ranch properties and carried the properties on its books at $ 250,000. Also on December 4, 1979, Mrs. Utley transferred the Shopping Center to Shamrock. Shamrock assumed the existing debt [2] and carried the Shopping Center on its books at $ 297,267.51. *607 On December 20, 1979, Mrs. Utley transferred an office building and 110 acres of land to Shamrock. Utley had purchased these properties in the 1950's and had transferred these properties to Mrs. Utley on March 6 and May 4, 1979. The Utleys reported this transfer to Shamrock on their 1979 Federal income tax return as an installment sale with a total sale price of $ 98,500 which was allocated $ 38,500 for the land and $ 60,000 for the building. Petitioners' adjusted basis in the properties was $ 500 for the land and $ 13,463 for the building. Mrs. Utley reported the receipt of $ 7,670.55 on petitioners' 1979 Federal income tax return as an installment on the sale of the 110 acres and the office building which she transferred on December 20, 1979. Shamrock's 1979 general journal lists a note payable to Vermelle S. Utley for $ 90,829.45, the balance of the sale price of the properties. An audit report of Shamrock, however, shows that on or before December 30, 1979, the installment obligation payable to Vermelle Utley was cancelled and the amount was credited to paid-in-capital. Mrs. Utley quitclaimed the property to Shamrock in 1982. Neither petitioner received either the $ *608 7,670.55 payment or a note on the installment sale. Shamrock never paid the $ 7,670.55 installment. In addition, Shamrock did not execute a note payable to Mrs. Utley. Petitioners deducted travel expenses for the taxable years at issue. In 1979, petitioners deducted $ 4,700 for auto, $ 2,809.37 for meals/lodging; in 1980, $ 1,383.86 for meals/lodging; in 1981, $ 4,650 for mileage; in 1982, $ 3,000 for mileage. Petitioners failed to substantiate any of these expenses. OPINION The Shopping Center and Bar U Ranch
ILC transferred the Shopping Center to Mrs. Utley on October 29, 1979. In return, she assumed ILC's $ 265,829.81 debt secured by the Shopping Center. Mrs. Utley transferred the Shopping Center to Shamrock on December 4, 1979. Shamrock assumed the existing debt and placed the Shopping Center on its books at $ 297,267.51. Respondent contends that ILC sold the Shopping Center to Mrs. Utley in the first transaction for $ 265,829.81, the debt she assumed when she received the property (she gave no other consideration). Respondent argues that Mrs. Utley then sold the Shopping Center to Shamrock for $ 297,267.51 as evidenced by the increased basis that Shamrock used *609 on its books. Respondent determined that petitioners recognized a $ 31,437.64 gain on the sale from Mrs. Utley to Shamrock. Petitioners argue that the transfer from Mrs. Utley to Shamrock qualified for nonrecognition treatment under section 351. Petitioners suggest that Shamrock incorrectly stepped up the Shopping Center's basis but that Shamrock's basis was irrelevant to determining petitioners' gain. Alternatively, petitioners argue that the transfer was a tax free contribution to capital. [3] Respondent counters by pointing to petitioners' failure to comply with the informational requirements of section 351 and the regulations thereunder, to Shamrock's stepped-up basis in the property and to petitioners' other property transfer to Shamrock later the same month (discussed below) which petitioners reported as an installment sale on their return. *610 Shamrock assumed petitioners' $ 265,829.81 debt in return for the Shopping Center. Respondent determined a realized gain of $ 31,437.64 because Shamrock recorded a stepped-up basis in the property on its books of $ 297,267.51. All the facts and circumstances of a transaction are relevant to determine whether it was a sale. Gooding Amusement Co. v. Commissioner,236 F.2d 159, 165 (6th Cir. 1956), affg. 23 T.C. 408 (1954), cert. denied 352 U.S. 1031 (1957). While we believe that all of the facts and circumstances in this case indicate that the transfer was a sale, we do not believe that petitioners realized gain on that sale. Petitioners sold the property to Shamrock for assumption of the debt. The amount which they realized on the sale was $ 265,829.81, i.e., the amount of the liability that Shamrock assumed. Petitioners received no other consideration. Petitioners' basis in the Shopping Center was $ 265,829.81. Their gain, therefore, was zero. Respondent urges that the amount petitioners realized was $ 297,267.51, the basis Shamrock *611 recorded for the Shopping Center on its books. The corporation's book treatment, while giving us reason to doubt the accuracy of petitioners' reporting of this transaction, is not, standing alone, sufficient to establish the amount petitioners realized on the sale. The preponderance of the evidence shows that petitioners did not receive any consideration other than the assumption of debt. Petitioner's accountant testified that Shamrock did not write any checks to petitioners, corroborating petitioners' own testimony that they received nothing else in return for the property. Because the only contrary evidence is the entry on Shamrock's books, we find that the basis recorded for this property by Shamrock was overstated. Respondent next determined that petitioners' transfer of the Bar U Ranch properties to Shamrock also was a sale. ILC transferred Bar U Ranch to petitioners in two transactions. First, ILC transferred land and buildings to petitioners on February 20, 1979. Petitioners borrowed $ 250,000 from the Federal Land Bank Association, also on February 20, 1979, secured by Bar U Ranch. Petitioners gave $ 232,964.26 of the loan proceeds to ILC. In the second transaction, *612 ILC transferred a house and lot to Utley on March 16, 1979, for $ 6,000. Following receipt of these properties, on December 4, 1979, Utley transferred the properties to Shamrock. Shamrock assumed the existing debt on which petitioners were liable and carried the Bar U Ranch properties on its books at $ 250,000. Petitioners argue that ILC really borrowed the $ 250,000, not petitioners. As a result, petitioners' basis in the property would be $ 250,000 when they received the property from ILC subject to the liability. Utley testified that petitioners borrowed the money only because the lender would not loan the money to ILC. Utley also testified that petitioners did not give ILC any consideration for the distribution of the Bar U Ranch. We conclude that the substance of the transaction is not different from its form and that petitioners, not ILC, borrowed the $ 250,000. Petitioners' names appear as debtors on the Federal Land Bank Loan Disbursement Statement. The bank would not lend the money to ILC, and petitioners were primarily liable on the loan. Petitioners borrowed the money, then contributed it to ILC. We also conclude that petitioners transferred $ 232,964.26 of *613 the proceeds to ILC in exchange for the Bar U Ranch land and buildings, paid $ 1,000 in fees in connection with the loan and paid ILC $ 6,000 for the house and lot. Petitioners' total cost basis in the Bar U Ranch properties, therefore, was $ 239,964.26. Petitioners characterize their transfer of the Bar U Ranch properties to Shamrock as a section 351 nonrecognition transaction on which gain is not recognized. Petitioners contend that although Shamrock's basis should have been a carryover basis, Shamrock's stepped up basis is not evidence that the transaction was a sale. Respondent argues that petitioners sold the Bar U Ranch properties to Shamrock for a total of $ 250,000. Respondent contends that petitioners' cost basis was $ 239,964.26, resulting in a $ 10,035.74 gain. [4]
*614 Petitioners received the full benefit of the loan proceeds from the Federal Land Bank. On the transfer to Shamrock, petitioners were fully relieved from liability on that debt. Petitioners acquired title and ownership of the properties on February 20 and March 16, 1979. They transferred title and ownership in exchange for Shamrock's assumption of debt on December 4, 1979. Consequently, we hold that petitioners' transfer of the Bar U Ranch properties to Shamrock was a sale. Petitioners must recognize a $ 10,035.76 gain on the sale of the Bar U Ranch properties to Shamrock. Because petitioners' holding period was less than one year, section 1222(1), the gain is taxed as short-term capital gain. Office Building and 110 Acres
Mrs. Utley transferred an office building and 110 acres of land to Shamrock on February 20, 1979. She treated the transfer as an installment sale with a total selling price of $ 98,500. On her 1979 Federal income tax return, Mrs. Utley reported receipt of $ 7,670.55 as an installment for the property. A 1979 general journal entry of Shamrock reflected a note payable to Mrs. Utley of $ 90,829.45, the balance of the sales price for the property. Shamrock's *615 1979 audit report, prepared in April of 1980, showed that the note was cancelled and the amount credited to paid in capital. Petitioners argue that the transaction actually was a section 351 transfer. Petitioners explain the installment sale treatment in 1979 as an error that the audit report corrected. Respondent contends that the transaction was an installment sale. Respondent also argues that petitioners recognized gain when the note was cancelled. Petitioners chose the form of their transaction and now seek to characterize it differently. Petitioners chose to treat the transfer of the property to Shamrock as an installment sale. They benefited from this treatment because their wholly owned corporation could depreciate the property at a higher basis while their gain was partially deferred by installment reporting. Petitioners' 1979 tax return and Shamrock's records consistently treated the transaction as an installment sale. Only later did petitioners' tax adviser suggest reconstructing the transaction as a section 351 transfer. We will not permit petitioners the advantage of tax planning with hindsight to disavow the form they selected for the transaction. Commissioner v. National Alfalfa Dehydrating & Milling Co.,417 U.S. 134 (1974); *616 Spector v. Commissioner,641 F.2d 376 (5th Cir. 1981), cert. denied 454 U.S. 868 (1981). Taxpayers, such as petitioners, who report their income on the cash-basis method of accounting do not realize income until cash is received. Sec. 1.446-1(c)(1)(i), Income Tax Regs. Petitioners did not actually receive the cash installment, but we believe they constructively received it. Because petitioners were dealing with their own controlled corporation, petitioners could have demanded payment of the installment at any time. The record does not show why petitioners failed to collect their installment, but for whatever reason, they permitted their corporation continued use of their funds. We believe the proper characterization of this transaction is as an installment sale the cash from which petitioners constructively received, sec. 1.451-2(a), Income Tax Regs., and contributed to the capital of Shamrock. Petitioners cancelled Shamrock's installment obligation to them prior to January 1, 1980. The cancellation *617 of the installment sales obligation triggers recognition of gain pursuant to section 453(d). [5] We believe that a shareholder "disposes of" an installment obligation upon cancelling his corporation's installment sale obligation to him. Cf. Jack Ammann Photogrammetric Engineers, Inc. v. Commissioner,341 F.2d 466 (5th Cir. 1965). The reality of the indebtedness is not diminished by its later cancellation. The economic advantage of the gain realized on the sale which is represented in part by the installment obligation, is not diminished by cancelling the obligation, it is transferred to petitioners' corporation. Petitioners "disposed of" the installment obligation when they cancelled the note. Under section 453(d)(1), petitioners' deferred gain on the installment sale must be recognized. *618 The gain on the disposition is "considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received." Sec. 453(d). The gain attributable to the land which Utley purchased sometime in the 1950's, therefore, is long-term capital gain. The gain attributable to the office building, depreciable property, is ordinary income to petitioners pursuant to section 1239. Home Office
The next issue is whether petitioners may deduct costs related to two home offices. The first office is in the home where petitioners reside in Holly Springs, Mississippi; the second office is in a home petitioners own in Hot Springs, Arkansas. Petitioners argue that Utley's use of both home offices satisfied the section 280A requirements for deductibility. Respondent contends that petitioners do not meet the section 280A requirements and may not deduct the expenses. In addition, respondent argues that the deductions for the Hot Springs office were more properly expenses of ILC. Section 280A generally disallows otherwise allowable deductions with respect *619 to the use of a home. Sec. 280A(a). An exception to the general rule is provided in section 280A(c)(1), which allows deductions with respect to a residence to the extent " allocable to a portion of the dwelling unit which is exclusively used on a regular basis" as the "principal place of business for any trade or business of the taxpayer." In the case of an employee, the deduction is allowable "only if the exclusive use * * * is for the convenience of his employer." Sec. 280A(c). Pursuant to section 280A deductions must be "otherwise allowable." Section 162 allows a deduction for ordinary and necessary business expenses incurred, but the business of a corporation is not the business of its shareholders or officers. Burnet v. Clark,287 U.S. 410 (1932). A corporation ordinarily pays for the cost of its office. The cost of a corporate office is not ordinarily a cost of an employee. Cf. Deputy v. DuPont,308 U.S. 488 (1940). Utley's business was not his corporation's business, and his use of corporate offices was not in his own business but in his corporation's *620 business. See Hewett v. Commissioner,47 T.C. 483 (1967). In addition, allowable deductions are personal to a taxpayer; one taxpayer may not take deductions that properly belong to another taxpayer. Roach v. Commissioner,20 B.T.A. 919 (1930). Utley is not entitled to a deduction that belongs to his corporations. Petitioners went to great lengths to illustrate the importance of the home office to corporate operations and the relative unimportance of the office in downtown Holly Springs. For instance, Utley testified that the office in his home "was my only office in Holly Springs." The office on Van Dorn was leased to a pharmacist until the beginning of 1979, which was used to gain local visibility. The office complex that petitioners built at the rear of their home was used for corporate operations. The expenses associated with that office are more properly expenses of ILC or Shamrock and not of petitioners. We reach the same conclusion with respect to the office in the Hot Springs home. Travel and Entertainment Expenses
The next issue is *621 whether petitioners may deduct unsubstantiated travel and entertainment expenses. Petitioners concede they do not have any evidence to substantiate expenses as required by section 274(d). Petitioners ask the Court to allow an equitable portion of the expenses that are not subject to section 274(d) to the extent permissible under the Cohan rule. Respondent contends that section 274(d) supersedes the Cohan rule and disallows unsubstantiated expenses. Section 274(d) requires substantiation of traveling expenses including the amount of the expense, the time and place of the travel, the business purpose of the expense and the business relationship to the taxpayer of anyone entertained. Petitioners, however, failed to produce any evidence to substantiate their travel expenses. Consequently, the expenses must be disallowed. Cf. Dowell v. United States,522 F.2d 708 (5th Cir. 1975), cert. denied 426 U.S. 920 (1976). Negligence Addition
Respondent determined a negligence addition due to petitioners' failure to report the gains from the sales of *622 property to Shamrock. Petitioners bear the burden of proving the section 6653(a) additions to tax for negligence are erroneous. Soares v. Commissioner,50 T.C. 909, 914 (1968). Petitioners contend they relied on their accountant, and the transactions in this case were not simple. We do not believe petitioners should be held liable for the addition to tax for negligence because application of the law to petitioners' complex transactions is not clear enough to warrant the inference that petitioners intentionally disregarded the law or that they were negligent. Under the circumstances, we cannot hold petitioners liable for the proposed additions to tax for negligence under sections 6653(a), 6653(a)(1) and 6653(a)(2). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years at issue, unless otherwise indicated.↩
2. It is unclear whether the unpaid balances of the loans were $ 250,000 on the Bar U Ranch and $ 265,829.81 on the Shopping Center at the time petitioners transferred the properties to Shamrock, but the record contains no evidence of payment on the debts.↩
3. Petitioners attempted at trial to amend their petition to claim that the property was worth $ 297,267.51 on October 29, 1979, when ILC distributed it to Mrs. Utley. This distribution would suggest a dividend from ILC to Utley and establish basis at the Shopping Center's value so that no gain would be recognized on the subsequent transfer of the property to Shamrock. We prevented petitioners from amending their petition at trial because of the prejudice to respondent. At trial respondent was not in a position to offer evidence of value or to rebut petitioner's assertion. Moreover, a dividend theory would raise other tax consequences to petitioners and require different proof at trial than the sale or section 351↩ theories, i.e., proof of earnings and profits (E&P) of ILC. If ILC had sufficient E&P, then the difference between fair market value and the $ 265,829.81 consideration paid would be a dividend from ILC and ordinary income to Utley. Sec. 301. If ILC did not have any E&P, then the difference would be a return of capital and then taxed as capital gain to petitioners. Sec. 301.
4. Prior to trial neither party argued that the transfer of the Bar U Ranch properties to petitioners was a dividend from ILC. If treated as a dividend, petitioners' basis in the property would equal its value so that no gain would be recognized on the transfer to Shamrock. Petitioners again attempted to amend their petition at trial to claim the Bar U Ranch properties were worth $ 250,000 at the time of distribution from ILC, producing a dividend and a fair market value basis to petitioners. For the same reasons expressed in note 3 supra,↩ we foreclosed petitioners from arguing that this distribution was a dividend.
5. Section 453(d) provided for gain or loss on disposition of an installment obligation as follows: (d) GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATION- (1) GENERAL RULE -- If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and -- (A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or (B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.↩