**Walter A. UTLEY and Vermelle S. Utley, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–4449.

United States Court of Appeals, Fifth Circuit.

July 13, 1990.

63. 781 F.2d at 407.

64. 781 F.2d at 415.

65. 781 F.2d at 417.

66. *Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d 832, 839 (2d Cir.1967).

William H. Lawson, Jr., Arlie C. Hooper, Bogatin, Lawson & Chiapella, Memphis, Tenn., for petitioners-appellants.

Peter K. Scott, Acting Chief Counsel, I.R.S., Kimberly Stanley, Gary R. Allen, Gilbert S. Rothenberg, William S. Rose, Jr., Asst. Atty. Gen., Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellee.

Before POLITZ, KING and WILLIAMS, Circuit Judges.

PER CURIAM:

Walter A. Utley and Vermelle S. Utley (collectively, Taxpayers) appeal from the decision of the tax court holding them liable for deficiencies in their federal income tax payments for 1979 through 1982. *Utley v. Commissioner*, 56 T.C.M. (CCH) 885 (1988). We agree with the tax court's conclusion that Taxpayers were liable for deficiencies relating to their installment sale of an office building and acreage to their wholly-owned corporation. As for Taxpayers' alleged transfer of a ranch and stock, we remand for further findings of fact and conclusions of law because the tax court failed to address whether a transfer of stock occurred and, if a transfer did occur, the tax implications thereof.

## I. *Background*[1]

Walter A. Utley and Vermelle S. Utley were sole shareholders of International Land Corporation (ILC) and Shamrock GMS Corporation (Shamrock). Because of ILC's financial difficulties,[2] it transferred certain properties (discussed *infra*) to Taxpayers in 1979. Then, in an attempt to avoid creditors, Taxpayers transferred many of these properties to Shamrock. The tax treatment of two of the transfers

from Taxpayers to Shamrock are the subject of this appeal.

### A. *Office Building and 110 Acres*

On December 29, 1979, Mrs. Utley transferred an office building and 110 acres of land to Shamrock. On Taxpayers' joint 1979 federal income tax return, this transfer was reported as an "installment sale" to Shamrock for $98,500.00. Taxpayers reported that they received an installment payment of $7,670.55, that their gross profit percentage was 64 percent and that, thus, their capital gain was $4,909.15.[3] Taxpayers' returns for the next three years failed to report any further gain from the sale.

Shamrock's 1979 general journal reflected the building and property as being "sold" to it and listed as a liability a "Note Payable to Vermelle Utley."[4] However, Shamrock did not execute a promissory note to Mrs. Utley. Shamrock also did not make actual payment of the first installment. Shamrock's returns for the years 1979 to 1982 reflected depreciation deductions for the building and land on a stepped-up basis, rather than a carryover basis. In 1982, Mrs. Utley quitclaimed the property to Shamrock.

The Commissioner determined that the transfer was an installment sale on which Taxpayers realized and were required to recognize gain. Moreover, the Commissioner determined that Shamrock's installment obligation was cancelled in 1979—triggering recognition of the entire gain on sale. Taxpayers filed a petition in tax court arguing that the transfer was a nonrecognizable contribution to capital, and not an installment sale. The tax court agreed with the Commissioner's interpretation of the transfer and rejected Taxpayers' assertion that the transfer should be considered a contribution to capital.

---

**1.** The years at issue in the present case antedate the Tax Reform Act of 1986.

**2.** ILC ultimately filed for bankruptcy in 1980.

**3.** Taxpayers stipulated at trial that the profit ratio was in error and was, in fact, 85 percent.

**4.** A later "adjusting entry" in Shamrock's 1979 audited financial statements reflected that Mrs. Utley had donated a note in the amount of $90,829.45 (sale price less first installment), which was credited to paid-in capital.

## B. Bar–U Ranch and Federal Land Bank Stock

On February 20, 1979, ILC transferred the land and buildings at the Bar–U. Ranch (Bar–U Ranch or Ranch) to Taxpayers.[5] Taxpayers also borrowed $250,000.00 from the Federal Land Bank (FLB) on that day, to be secured by the Ranch. By statute, and as a condition for the loan, Taxpayers were required to purchase $12,500.00 of FLB stock. Loan proceeds in the amount of $232,964.26 were given to ILC by Taxpayers.

On December 4, 1979, Taxpayers transferred the Bar–U Ranch to Shamrock. According to Taxpayers, they also transferred the FLB stock. Shamrock assumed Taxpayers' debt.

The tax court concluded that Taxpayers borrowed $250,000.00 from the FLB and that they transferred $232,964.26 of the proceeds to ILC, paid $1,000.00 in fees in connection with the loan and paid ILC $6,000.00 for a later purchase of a house on the Ranch. Thus, the tax court calculated Taxpayers' total cost basis in the Ranch at $239,964.26. The tax court also rejected Taxpayers' contention that their subsequent transfer of the Bar–U Ranch properties to Shamrock was a nonrecognizable transfer. The court calculated Taxpayers' gain on the sale to Shamrock as $10,035.76 but made no finding as to whether Taxpayers had transferred the FLB stock to Shamrock. On appeal, Taxpayers challenge only the court's calculation of the gain.

## II. Transfer of Office Building and Acreage

Taxpayers contend that the tax court erred in characterizing Taxpayers' transfer of an office building and 110 acres to Shamrock as a sale rather than a nonrecognizable contribution of capital by a shareholder to her controlled corporation under 26 U.S.C. § 351.[6] Taxpayers maintain that, due to accounting errors, they, and Shamrock, originally characterized the transfer as an installment sale. Taxpayers point out, however, that they never received payment and were never issued a note from Shamrock, and that Shamrock adjusted its audited financial statements to classify the transfer as a paid-in capital contribution. The Commissioner disagrees with Taxpayers and points to Taxpayers' initial treatment of the transaction as a sale on their 1979 return, Taxpayers' failure to correct their 1979 return or otherwise fulfill requirements for section 351 treatment, Shamrock's original treatment of transaction as a sale, Shamrock's consistent use of a stepped-up basis consistent with a sale, and the tax court's conclusion that Taxpayers' constructively received an installment payment.

■■■ Whether the transfer of the office building and 110 acres was an installment sale or a contribution to capital entitled to nonrecognition under section 351 is a question of fact. Thus, we review the tax court's characterization of the transfer as an installment sale under the clearly erroneous standard.[7] See Truck Terminals v.

---

5. In a second transaction, ILC transferred a house at the Ranch to Taxpayers.

6. Section 351 generally provides:
   (a) General Rule.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. . . .

7. Taxpayers argue that we should apply a de novo standard of review. They cite pre–1980 cases which held that "the legal characterization for federal tax purposes of the transactions between the parties . . . is not a question of fact" subject to clearly erroneous review. Casner v. Commissioner, 450 F.2d 379, 387 (5th Cir.1971); Waterman Steamship Corp. v. Commissioner,

430 F.2d 1185, 1192 (5th Cir.1970), cert. denied, 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971). However, these decisions were apparently grounded in our "conceptual thicket of ultimate and subsidiary facts" which was levelled by the Supreme Court in Pullman–Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), as recognized in the tax context in Byram v. United States, 705 F.2d 1418, 1421–23 (5th Cir.1983). As Byram explained, Pullman–Standard held that Rule 52(a) "broadly requires" that findings of fact not be set aside unless clearly erroneous even where an "objective inquiry" of multiple factors is made by the tax court. Id. at 1422–23 & n. 9. Whether a transfer was a sale is an inherently factual question; therefore, the clearly erroneous standard of review applies.

*Commissioner,* 314 F.2d 449, 453–54 (9th Cir.1963) (whether a transfer is a sale or a nonrecognition event is governed by the clearly erroneous standard); *see also Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960) (clearly erroneous rule applies "to factual inferences from undisputed facts"). "All the facts and circumstances are to be considered, including the formal acts of the parties, in determining ... the substance and form of the transaction ...." *Yamamoto v. Commissioner,* 73 .T.C. 946, 954 (1980), *aff'd without opinion,* 672 F.2d 924 (9th Cir.1982). Under all the facts and circumstances of this transaction, we cannot say that the tax court clearly erred in characterizing the transfer of Taxpayers' building and land to Shamrock as an installment sale, rather than as a section 351 transfer.

Taxpayers, on their 1979 income tax return, reported as a gain the $7,670.55 "installment payment" on the subject land and acreage. Had Taxpayers intended to claim that the transfer was a nonrecognizable contribution to capital, the Treasury Regulations prescribe that the transfer be identified as a section 351 transfer. Treas. Reg. § 1.351–3.[8] Significantly, Taxpayers never amended their 1979 return to remove the reported gain from sale or otherwise fulfilled the reporting requirements for section 351.

Moreover, Shamrock carried the property on its books at a stepped-up basis of $98,-500.00 (fair market value), consistent with a sale, rather than a carryover basis, consistent with a section 351 transfer. Section 351, when read in conjunction with section 362, requires that a transferee corporation assume a carryover basis in the property on which gain is not recognized. *Reef Corp. v. Commissioner,* 368 F.2d 125, 130 (5th Cir.1966) ("a corollary to nonrecognition of gain ... requires the carryover of the basis of corporate assets"), *cert. denied,* 386 U.S. 1018, 87 S.Ct. 1371, 18 L.Ed.2d 454 (1967); *Parkland Place Co. v. United States,* 354 F.2d 916, 917 n. 1 (5th Cir.1966) ("Section 351, in conjunction with Section 362, provides for the non-recognition of gain or loss upon transfer and the carry-over of the transferor's basis to the transferee"). Shamrock, in contrast, took a stepped-up basis in the subject property and did not subsequently amend its records to report a carryover basis. In fact, Shamrock has taken a depreciation deduction on the higher basis since 1979. Shamrock's use of the stepped-up basis is entirely consistent with the tax court's conclusion that the transfer to Shamrock was a sale. Furthermore, Shamrock listed on its general ledger a balance due on the sale of $90,-829.45 as a "Note payable to Mrs. Utley."

Taxpayers contend, however, that their reporting of the transfer to Shamrock as a sale, and Shamrock's treatment of the transfer as a sale, were "accounting error[s]." They point to an adjusting journal entry in connection with Shamrock's 1979 final audited financial statements, which credited the balance of the installment obligation to paid-in capital, as a "correction" of the improper characterization in Shamrock's 1979 ledger entry. However, the "mistake" arose again—as Taxpayers' 1979 return reported $7,670.55 as gain from an installment sale. Moreover, subsequent to Shamrock's 1979 final audit, Shamrock continued to calculate depreciation using a stepped-up basis in the property. In fact, Taxpayers' reported gain and Shamrock's supposedly erroneous use of a stepped-up basis were never corrected in the years following discovery of the alleged "accounting error[s]." Thus, Taxpayers' claim of accounting error proves, to say the least, uncompelling.

Taxpayers further argue that because Shamrock never paid the first installment

---

**8.** Treasury Regulation § 1.351–3(a) requires:

Every person who received the stock or securities of a controlled corporation, or other property as part of the consideration, in exchange for property under section 351, shall file with his income tax return for the taxable year in which the exchange is consummated a complete statement of all facts pertinent to such exchange, including ...

A similar statement must be filed by the controlled corporation. Treas. Reg. § 1.351–3(b). Neither Taxpayers nor Shamrock filed such a statement.

or issued a promissory note for the balance, the transfer cannot be characterized as a sale. However, the tax court found that an installment sales agreement existed despite the absence of a written promissory note to Taxpayers. The tax court also held that the installment payment had been constructively received.

■ The tax court's holding, that an installment sales agreement could exist between a controlling shareholder and her controlled corporation even without a promissory note, is consistent with the conclusions of this and other circuits. *See Jack Ammann Photogrammetric Engineers, Inc. v. Commissioner,* 341 F.2d 466, 466 (5th Cir.1965) (hereinafter *Ammann*); *Fetzer Refrigerator Co. v. United States,* 437 F.2d 577, 580 (6th Cir.1971). The tax court's finding that an installment sales agreement exists is corroborated both by Taxpayers' 1979 income tax statement and by Shamrock's general ledger and tax returns. We cannot therefore say that the tax court's finding that an installment sales agreement was struck is clearly erroneous.

■ The tax court's additional conclusion that the fact that Taxpayers did not receive the $7,670.55 installment did not vitiate the existence of a sales agreement because Taxpayers, in fact, constructively received the installment, is also not clearly erroneous. Treasury Regulation § 1.451–2(a) provides that:

> Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, *or otherwise made available to him so that he may draw upon it at anytime, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given.* However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. . . .

(emphasis added). There is no evidence in the record that Taxpayers, who together owned 100 percent of Shamrock, were in any way restricted from withdrawing installment payments from Shamrock. *See Fetzer Refrigerator Co.,* 437 F.2d at 580. Thus, we cannot say that the tax court clearly erred in concluding that Taxpayers' constructively received payment because they "could have demanded payment of the installment at any time."

Taxpayers' position, if accepted, would permit them to avoid a gain on the subject property as a nonrecognizable transfer, and contemporaneously permit their controlled corporation, Shamrock, to depreciate on a higher stepped-up basis applicable to sales.[9] Taxpayers structured their transfer to Shamrock as an installment sale and indicated such on their 1979 tax return. Now, they seek to recast that transfer as a nonrecognition event under section 351. The Supreme Court has disapproved of such schizophrenic conduct:

> while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not.

*Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974); *see also Spector v. Commissioner,* 641 F.2d 376, 381–82 (5th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 334, 70 L.Ed.2d 171 (1981) (The Commissioner, "as a general rule, may . . . bind a taxpayer to the form in which the taxpayer has cast a transaction."). Taxpayers set up their transfer as an installment sale. After reviewing all the facts and circumstances, we cannot say that the tax court clearly erred in concluding that Taxpayers' original construction of

---

**9.** Taxpayers concede that this would be an inequitable result but contend "that the Commissioner should have corrected this lack of symmetry *by adjusting Shamrock's treatment of the transaction,*" not Taxpayers. (emphasis in original). However, we conclude that the tax court did not clearly err in accepting *Taxpayers'* original treatment of the transaction. Symmetry is thus maintained because Taxpayers' tax liability and Shamrock's tax liability both prove consistent with the characterization of the transaction as a sale.

the transfer was an inaccurate reflection of its substance.

■ Having determined that the tax court did not clearly err in characterizing Taxpayers' transfer as an installment sale, we must next consider whether the tax court erred in concluding that Taxpayers cancelled Shamrock's installment obligation in 1979, thereby triggering recognition of a gain under 26 U.S.C. § 453(d). Taxpayers contend that the tax court did so err, but we disagree.

When the cash received from an installment sale is only a small portion of the sales price, a taxpayer need not pay income tax in the year of sale for the full amount of anticipated profit. Under section 453, a taxpayer may spread taxable gain realized on a sale or exchange over the period in which sales proceeds are actually received. 26 U.S.C. § 453(a); *see also Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 503, 68 S.Ct. 695, 699, 92 L.Ed. 831 (1948). However, section 453(d) provides:

> (d) GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATION—
>
> (1) GENERAL RULE—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—
>
> > (A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or
> >
> > (B) the fair market value or the obligation at the time of distribution, transmission, or disposition, in the case of the distribution, transmission, or disposition otherwise than by sale or exchange.
>
> Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

In *Ammann*, we concluded that cancellation of an installment obligation owed by a corporation to its controlling shareholder was a taxable event for the shareholder under section 453(d). 341 F.2d at 469. There, a 78 percent shareholder made an installment sale to a corporation. Two years later, the shareholder transferred the installment obligation to the corporation in exchange for stock. *Id.* at 468. The Commissioner argued that the corporation incurred tax liability under section 453(d). The tax court agreed and held that the corporation realized income upon cancellation of the installment obligation. We reversed, concluding that cancellation of the installment obligation by the shareholder [10] was a taxable gain to the *shareholder* but not the corporation. *Id.* at 469. Thus, cancellation of the installment obligation triggers recognition of previously deferred gain. Admittedly, the question of the shareholder's tax liability was not before the court in *Ammann*. However, the court intimated that had the shareholder been before the court, cancellation of the installment obligation would have resulted in tax liability under section 453(d). *Id.* at 469 ("[A] persuasive case has been made out for the [corporation's] contention that the transfer of [its] installment obligation to it in return for stock gave rise to a taxable gain to [the shareholder] under Section 4539(d)(1). However, [the shareholder's] tax is not before us for decision.").

Taxpayers contend, however, that *Ammann* is distinguishable because here, unlike *Ammann*, Taxpayers received no additional stock or other consideration from Shamrock in exchange for the cancellation of the installment obligation in 1979. Taxpayers' argument is unpersuasive, however, because, although Taxpayers were not issued additional stock, the economic value of their existing stock increased upon extinguishment of Shamrock's debt to Taxpayers. Shamrock need not have made the

---

10. The return of the stockholder's claim against the corporation "cancels" that obligation because it results in the corporation "becoming both creditor and debtor," thereby merging or cancelling the debt. *Jack Ammann Photogrammetric Engineers, Inc. v. Commissioner,* 341 F.2d 466, 469 (5th Cir.1965).

"meaningless gesture" of issuing stock to its sole shareholder. *See Lessinger v. Commissioner*, 872 F.2d 519, 522 (2d Cir. 1989) ("requirements of section 351 are met where a sole stockholder transfers property to a wholly-owned corporation even though no stock or securities are issued"); *Jackson v. Commissioner*, 708 F.2d 1402, 1405 (9th Cir.1983).

Taxpayers alternatively contend that *Ammann* is distinguishable because, in that case, there was a two year span between the creation and cancellation of the installment obligation, whereas, in the instant case, they claim the installment obligation was "rescinded" within a single tax year. However, we do not see how Taxpayers can assert that the installment sale was rescinded when the property remained with Shamrock and only Shamrock's payment obligation was cancelled.

We therefore conclude, as did the tax court, that Taxpayers' cancellation of Shamrock's installment obligation triggered section 453(d).

### III. *Alleged Transfer of Federal Land Bank Stock*

Taxpayers contend that when they transferred the Bar–U Ranch to Shamrock, they also transferred $12,500.00 worth of FLB stock they were required to purchase as a condition for obtaining an FLB loan. Taxpayers argue, therefore, that $12,500.00 of the amount realized should have been applied against their basis in the FLB stock, while the remaining $237,500.00 applied against their $239,964.26 adjusted basis in the Bar–U Ranch. This, they contend, would result in a $2,464.26 loss, rather than a $10,035.74 gain on the Ranch, and no loss or gain on the stock:

| | TAXPAYERS' CALCULATION | | TAX COURT'S CALCULATION |
| --- | --- | --- | --- |
| | Bar–U Ranch | FLB Stock | Bar–U Ranch |
| Amount Realized | $237,500.00 | $12,500.00 | $250,000.00 |
| Adjusted Basis | (239,964.26) | (12,500.00) | (239,964.26) |
| Gain (Loss) | $ (2,464.26) | 0 | $ 10,035.74 |

ILC transferred the Bar–U Ranch to Taxpayers in two transactions. First, on February 20, 1979, ILC transferred most of the land and buildings. Also on that date, Taxpayers borrowed $250,000.00 from the FLB, secured by the Ranch. As a condition for the loan, Taxpayers were required to purchase $12,500.00 worth of stock in the FLB. Taxpayers gave $232,964.26 of the loan proceeds to ILC. In the second transaction, on March 16, 1979, ILC transferred a house on the Ranch to Taxpayers for $6,000.00.

What happened next is unclear. According to Mr. Utley's testimony at trial, Taxpayers transferred the Ranch *and FLB Stock* to Shamrock, and Shamrock assumed Taxpayers' $250,000.00 debt. The Commissioner contends that the Ranch was transferred but not the FLB stock. The tax court's calculation of Taxpayers' gain is consistent with the Commissioner's assess-

ment. However, the tax court, in its opinion, did not address the question of whether Taxpayers had transferred the FLB stock to Shamrock.

The only evidence in the record on whether or not the stock was transferred to Shamrock was the testimony of Mr. Utley. He arguably indicated that the stock had in fact been transferred. However, Taxpayers failed to present any documentary evidence of such transfer. In Mr. Utley's direct examination, he testified:

Q: All right. Would you go back up, and I believe you said there was $12,500 of capital stock?

A: Yes, sir.

Q: Would you explain what that is for?

A: That is a policy of the farm credit system and the Federal Land Bank to cause the borrower to pay into the Federal Land Bank 5 percent of the

total loan, and it is part of the loan, it stays part of the loan until it is paid off.

\* \* \* \* \* \*

The Court:—what happens to the stock?

A: It is still—*Shamrock still has the stock,* Your Honor, and at the present time we owe approximately $52,500, and it is still part of this stock—it is still part of the loan. (emphasis added).

The Court: You get the money back when you pay off the loan?

A: Well, if I were to walk in Jackson, Mississippi and pay approximately $40,000, they would discount the $12,-500 or they would, I guess, retire it, and I would not have to pay for the $12,500.

The Court: All right. So when the balance of loan gets down to $12,500, you can surrender the stock, and they will cancel the loan.

A: Yes, sir.

Counsel for Taxpayers also indicated that when the debt "was transferred to Shamrock GMS Corporation they transferred the loan and everything into—the property into Shamrock." The terms and conditions for loans by the FLB provide that "[i]n the case of a sale of mortgaged land, the Federal Land Bank *may permit* said mortgage and the stock interests of the vendor to be assumed by the purchaser." 12 U.S.C. § 771 (emphasis added); *see also* 12 U.S.C. § 2034.

The tax court's calculation of the gain on sale of the Bar–U Ranch is consistent with a conclusion that no stock was transferred to Shamrock.[11] However, the only evidence in the record arguably suggests that a transfer was in fact made; the tax court did not specifically address the transfer issue; and it did not discredit Mr. Utley's testimony or conclude that his testimony was insufficient. Federal Rule of Civil Procedure 52(a) requires that where, as here, the court is the trier of fact, "the court shall find the facts specifically and

state separately its conclusions of law thereon ...." The Rule's aims are two-fold:

(1) to engender care on the part of the trial judge in ascertaining the facts and

(2) to make possible meaningful review in the appellate courts.

*Gupta v. East Texas State University,* 654 F.2d 411, 415 (5th Cir.1981). The tax court's failure to specifically address the transfer issue renders these aims unfulfilled. We therefore vacate in part and remand to the tax court for findings of fact and conclusions of law on whether FLB stock was transferred to Shamrock and what the tax implications are of the tax court's conclusion on the transfer or lack thereof. *Matter of Texas Extrusion Corp.,* 836 F.2d 217, 219–21 (5th Cir.1988) ("Normally when the trial court fails to make findings and an appeal is taken, the appellate court will vacate the judgment and remand the action for appropriate findings to be made on the material issues.").

## IV.

While we agree with and affirm the tax court's treatment of Taxpayers' transfer of the office building and 110 acres, we vacate the judgment for findings of fact and conclusions of law with respect to the alleged transfer of FLB stock and for entry of a new judgment reflecting such findings and conclusions.

VACATED and REMANDED.

---

**11.** Given the brevity of the evidence and argument on the stock transfer issue, it is quite possible that the tax court overlooked it.